**BAKERY & CONFECTIONERY UNION and Industry International Health Benefits and Pension Funds**

v.

**UNITED BAKING COMPANY.**

Civ. A. No. 80–185.

United States District Court, W. D. Pennsylvania.

July 25, 1980.

Theodore Goldberg, Pittsburgh, Pa., for plaintiff.

Robert A. Cohen, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KNOX, District Judge.

This action is brought by the International Health Benefits and Pension Funds of the Bakery and Confectionery Union claiming violations of the collective bargaining agreements to make payments into these funds. The action is brought under various subsections of Section 502 of ERISA (Employment Retirement Income Security Act of 1974) 29 U.S.C. § 1132 and also under Section 301(a) of the Labor Management Relations Act of 1947 as amended, 29 U.S.C. § 185(a).

The plaintiff claims that defendant has violated the collective bargaining agreement whereby it agreed to make payments into the plaintiff pension and health benefits fund. (Hereinafter the "funds"), particularly Appendix B, Section C(1) attached to the amended complaint and also Appendix C, Subsection E. In these provisions of the collective bargaining agreement, it is provided that the employer is to make payments into the international welfare fund and into the pension fund at rates as set forth in the contract.

The key words as far as the present controversy is concerned are contained in the language, "for each day or portion thereof on which an employee subject to the collective bargaining agreement *receives pay.*" The question is whether payments of severance pay and vacation pay under the circumstances existing here where there had been an illegal strike which was settled constitute pay with respect to payments into the welfare and pension fund. Both parties agree that the defendant United Baking Company was forced to cease operations in 1978. There had been a long strike by the Bakery and Confectionery Union hereinafter (union) wherein the union members refused to work unless their demands were granted. Eventually, the company stated it was unable to meet the union demands and was compelled to sell its assets and liquidate. The purchaser naturally was alarmed about purchasing the defendant's assets under these conditions and the union demanded that the dispute regarding severance and vacation pay be settled before it would agree to the purchase of the company's plant facilities. Otherwise, the purchaser was merely buying a strike. Eventually, a settlement agreement was reached with the union and turned into a settlement agreement which is attached to the affidavit of Robert D. Martin, filed by the defendant. This agreement provides that United Baking should pay certain portions of the severance pay in installments and provides "this sum is to be distributed pro rata to those employees entitled to severance pay." In like manner it was provided that United shall pay for all unpaid vacations due and owing as of May 1, 1978 in installments in accordance with the schedule attached to the agreement marked Exhibit B. The agreement had numerous other agreements in it and broad general releases by United against the union and all employees arising out of matters resulting in the releases exchanged between the parties. There were mutual releases and discharges also by the union and their members to United and Barsotti, the purchaser.

The significant clause of this settlement agreement is contained in paragraph 17 insofar as this lawsuit is concerned which reads: "17. *Excluded from this agreement are any questions involving workmen's compensation matters, pension matters, health and welfare fund matters and life benefit fund matters.*" It will be noted particularly that the union and the members are not the plaintiffs in this case but the plaintiffs are the health benefits and pension fund of the Bakery and Confectionery Union and Industry International. It was further set forth that the union shall require all employees to sign acceptances and releases in favor of United and the union preconditions for receipt of sums due. The question thereupon arises which is presented to the court in this suit as to whether the duty of United to make contributions to these pension and welfare funds survives the settlement agreement the obligations being based upon the collective bargaining agreement between the union and United.

We again note that in the settlement agreement, it is expressly provided that questions involving pension matters and health and welfare matters are not covered. Defendant claims that the settlement agreement results in the payment of damages and that this should not be regarded as pay. It seems rather clear that health and welfare and pension matters are excluded. Referring to the settlement agreement, it is noted that in 1(a) the funds are to be distributed to the employees for severance pay. Again, under paragraph 4, pro rata vacation pay is to be paid direct to the employees. Under paragraph 13, it is provided: "The union further agrees that except as provided herein, this agreement sets forth the total amounts due and owing by United to the union and to its employees represented by the union." In other paragraphs 14 and 15, the union its members give up all rights against United including collective bargaining obligations, unfair labor practices, grievance and arbitration procedures. This would seem to answer the claim of the defendant that this dispute should have been sent to arbitration.

Many cases regard severance pay and vacation pay earned day by day after the termination of the contract as payment of wages. See *In re Ad Service Engraving Co.*, 338 F.2d 41 (6th Cir. 1964); *In re W. T. Grant Co.*, 474 F.Supp. 788 (S.D.N.Y.1979); c.f. *In re Public Ledger Inc.*, 63 F.Supp. 1008 (E.D.Pa.1945) reversed on other matters 161 F.2d 762 (3d Cir. 1947).

It will be noted that the funds are not parties to the collective bargaining agreement and that suits for contributions to such funds have almost invariably been brought in the form of civil actions such as this.

It will also be noted that in this case, the plaintiffs are the funds themselves, not the union, not the individual members of the union or any parties to the collective bargaining agreement. The funds appear to be separate entities and trusts with separate rights to ensure the payment of contributions to them. Settlement agreements could not bind the trust fund without their consent, they are proper parties to bring this suit and there is nothing in the settlement agreement which makes it binding upon the funds and, as a matter of fact, it is specifically excluded from affecting their rights.

We, therefore, hold that under the circumstances, the funds are not bound by any agreement made by the union. The parties have clearly and explicitly put their agreements in writing and we therefore would not be permitted to receive evidence contradicting the plain words of the contracts.

An appropriate order will be entered entering judgment for the plaintiff and against the defendant for contributions due the fund in behalf of each fund. We direct that this computation containing an appropriate order in the case calculating the damages be submitted to the court within 10 days from the date of this order with proper notice to the defendants. The matter of counsel fees, if any, which may be due under these circumstances will be left to a subsequent motion to be filed by plaintiffs likewise within 10 days.